UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GROW MICHIGAN, LLC,

       Plaintiff,

v.

LT LENDER, LLC, JERRY REINHARDT,
JOHN REINHARDT, BRUCE CAMPBELL,
PAUL SHAMO, ROBERT CAUSLEY,
DAMIAN KASSAB, ROBERT DRAKE,
and SOLYCO, LLC,

       Defendants.               Civil Case No. 20-11391
_____/    Honorable Linda V. Parker

DAMIAN KASSAB,

       Counter-Plaintiff/Third-Party Plaintiff,

v.

GROW MICHIGAN, LLC,

       Counter-Defendant,

PATRICK O'KEEFE,

       Third-Party Defendant.
_____/

## **OPINION AND ORDER**

    Plaintiff GrowMI, LLC brings this lawsuit against Defendants alleging that

Defendants engaged in a scheme to take control of Lightning Technologies, Inc.,

pay off entities to support the take-over, and obtain loans to finance the scheme.  In an Amended Complaint filed July 31, 2020, GrowMI asserts nine counts: five counts against all Defendants for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* (Counts 1-5); fraud against Defendants Paul Shamo, Robert Causley, and Damian Kassab (Count 6); unjust enrichment against Defendants LT Lender, Jerry Reinhart, John Reinhart, and Bruce Campbell ("LT Lender Defendants") (Count 7); conspiracy against all Defendants (Count 8); and breach of contract against Shamo and Causley (Count 9).  (Am. Compl., ECF No. 27.)  Federal subject matter jurisdiction is premised on Plaintiff's RICO claims.  (*Id.* ¶ 25, Pg ID 1190.)

Kassab has filed a Counter-Complaint against GrowMI (ECF No. 38) and a Third-Party Complaint against Patrick O'Keefe, GrowMI's chief executive officer (ECF No. 39).  Kassab alleges that GrowMI and O'Keefe have filed several baseless lawsuits in Michigan state court as part of an orchestrated effort to takeover Lightning and help O'Keefe's alleged long-time friend and Lightning's chief executive officer Jeffrey Owen.  (*See, e.g.* Counterclaim ¶ 1, ECF No. 38 at Pg ID 1394.)  Kassab asserts only state law claims against GrowMI and O'Keefe in his pleadings: tortious interference with contract and business expectancy (Count I); civil conspiracy (Count II); and defamation (Count III).  (ECF Nos. 38, 39.)

The parties have filed several motions in this matter, which are currently pending:

- Kassab's Motion to Dismiss First Amended Complaint, filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) (ECF No. 45);

- The LT Lender Defendants' Motion to Dismiss First Amendment Complaint under Fed. R. Civ. P. 12(b)(1) and (6) (ECF No. 47);

- Solyco LLC's Motion to Dismiss First Amended Complaint, filed pursuant to Rules 12(b)(1) and (6) (ECF No. 51);

- GrowMI and O'Keefe's Motion to Dismiss Kassab's First Amended Counterclaim and First Amended Third-Party Complaint, filed pursuant to Rules 12(b)(1) and (6) (ECF No. 53);

- GrowMI's Motion to Compel Rule 26(f) Conference (ECF No. 66);

- Defendants' Motion to Stay Discovery Pending Resolution of the Current Motions to Dismiss (ECF No. 73); and

- Kassab and Solyco's Motion to Refer Case to Bankruptcy Court (ECF No. 78);[1]

- Robert Drake and Shamo's Motion to Change Venue to the United States Bankruptcy Court (ECF No. 79); and

---

[1] On February 5, 2021, three of Lightning's creditors filed an involuntary Chapter 7 petition against Lightning in the Bankruptcy Court for the Eastern District of Michigan. *In re Lightning Technologies, Inc.*, No. 21-41019 (E.D. Mich. filed Feb. 5, 2021).

- GrowMI's Motion to Bifurcate (ECF No. 82).

All but the last three motions have been fully briefed. The Court has stayed briefing as to the bankruptcy-related motions and the motion to bifurcate.

Finding the facts and legal arguments sufficiently presented in the parties' filings with respect to the fully-briefed motions, the Court is dispensing with oral argument as to those motions pursuant to Eastern District of Michigan Local Rule 7.1(f). For the reasons set forth below, the Court concludes that the pending motions to dismiss should be granted. It, therefore, is denying as moot the remaining pending motions.

## I.    Applicable Standards

Federal Rule of Civil Procedure 12(b)(1) is the applicable procedural rule for challenging lack of subject matter jurisdiction.[2] "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Madison-Hughes v. Shalala*, 80 F.3d

---

[2] There is a distinction between challenging subject matter jurisdiction for purposes of Article III of the U.S. Constitution and claiming a lack of standing under RICO. *See Stooksbury v. Ross*, 528 F. App'x 547, 554 (6th Cir. 2013) (explaining that "Article III standing, which requires a 'concrete and particularized' injury to be 'fairly traceable' to the defendant's conduct and be redressable, is less onerous than RICO standing, which requires that the injury be directly caused by the defendant's predicate acts.") (citations omitted). RICO standing is not jurisdictional. *Id.* As a result, a challenge to Article III jurisdiction is brought pursuant to Federal Rule of Civil Procedure 12(b)(1); whereas, a challenge to RICO standing is evaluated under Rule 12(b)(6). *Id.* at 555.

1121, 1130 (6th Cir. 1996). "Rule 12(b)(1) motions to dismiss for lack of jurisdiction generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).

A facial attack challenges the sufficiency of the pleading itself. In that instance, the court accepts the material allegations in the complaint as true and construes them in the light most favorable to the nonmoving party. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974)). In contrast, a factual attack is "not a challenge to the sufficiency of the pleading's allegation, but a challenge to the factual existence of subject matter jurisdiction." *Id.* When a factual attack, also known as a "speaking motion," raises a factual controversy, the district court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter jurisdiction does or does not exist." *Gentek Bldg. Prods.*, 491 F.3d at 330 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). "In its review, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts." *Id.*

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668.  Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing Twombly, 550 U.S. at 555).

In contrast to a Rule 12(b)(1) motion, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)).  A court that considers such matters must first convert the motion to dismiss to one for summary judgment. *See* Fed. R. Civ. P 12(d).  However, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## II.  Relevant Factual Allegations

GrowMI is a sub-debt lender which focuses on community reinvestment by providing growth capital to Michigan-based small and mid-sized businesses.  (Am. Compl. ¶ 28, ECF No. 27 at Pg ID 1191.)  GrowMI is funded by a collaboration of federal and state banks doing business in Michigan, the Michigan Strategic Fund, and the State of Michigan through the Michigan Economic Development Corporation.  (*Id.*)

Lightning is a Delaware start-up corporation based in Michigan.  (*Id.* ¶ 1, Pg ID 1185.)  Lightning owns proprietary technology for a lightweight, hybrid pallet, which is more durable and stronger than traditional wood pallets and contains anti-microbial and anti-fungal additives which would make them particularly useful in the shipment of cold food products.  (*Id.* ¶ 31, Pg ID 1192.)  Lightning has developed significant trade secrets and confidential information related to specific technology, including software, coatings, and related formulations and application processes, as well as trademarks, licenses, patents, and pending patent applications.  (*Id.*)  In or around 2019, Lightning needed funding to pay off a previous debt to LT Lender and to acquire the necessary production equipment to become fully operational.  (*Id.* ¶ 1, Pg ID 1185.)

Specifically, Lightning needed to raise approximately $26 million.  (*Id.* ¶ 37, Pg ID 1193.)  A plan was developed to raise the money from a combination of debt

and equity, which was as follows: $7 million from Flagstar Bank, $5 million from GrowMI, $10 million from lines of credit from Shamo and Causley (shareholders in Lightning), and $4 million in additional equity. (*Id.* ¶ 37, Pg ID 1193.) With such funding, Lightning represented that it would become fully operational by June or July 2020. (*Id.* ¶ 41, Pg ID 1193-94.) Lightning further represented that, before the end of December 2019, it would order and pay for the necessary equipment to become operational. (*Id.* ¶ 42, Pg ID 1994.) As a condition to its funding, GrowMI required that Lightning secure the additional funding, including the lines of credit from Shamo and Causley, and pay off its debt to LT Lender. (*Id*. ¶¶ 40, 43-52, 56, Pg ID 1193-96.)

LT Lender provided a "payoff" letter, which GrowMI received, reflecting that Lightning owed LT Lender a total balance of $3,323,606.68 on a "Promissory Note and Security Agreement dated June 20, 2019." (*Id*. ¶ 60, Pg ID 1197.) According to GrowMI, the actual amount Lightning owed LT Lender as of August 30, 2019, was $2,228,386.11. (*Id*. ¶ 63, Pg ID 1997; *see also* ECF No. 8.) GrowMI alleges that the additional amount paid to LT Lender was a payment to reduce its non-dilutable interest to settle a bogus claim and convert respective equity interests of LT Lender and its principals (including Jerry Reinhart, John Reinhart, and Bruce Campbell) into common stock. (Am. Compl. ¶ 66, ECF No. 27 at Pg ID 1198.) GrowMI further alleges that Kassab convinced Lightning that

LT Lender's principals had a *bona fide* claim to a substantial equity stake in Lightning and to accept a settlement agreement with LT Lender. (*Id.* ¶ 89, Pg ID 1203.)

Pursuant to the settlement, Lightning agreed to pay LT Lender $3,253,802.78. (Settlement Agreement at 1, ECF No. 8 at Pg ID 343.) Lightning also agreed to an undisclosed Technology Exploitation and License Agreement with a newly formed entity, Structural Coatings and Products, LLC ("SCP"), of which Lightning held a 35% interest and LT Lender owned a 65% interest. (*Id.*; *see also* Am. Compl. ¶¶ 69-70, ECF No. 27 at Pg ID 1198-99.) LT Lender was provided the authority to control SCP, without interference from Lightning. (*Id.* ¶¶ 71-74, Pg ID 1199.) The technology produced by Lightning and licensed to SCP "'relate[ed] to products and processes used or usable for spraying, encapsulating, coating and/or manufacturing products coated with or molded out of polyurea hybrid material ….'" (*Id.* ¶ 75, Pg ID 1199-20 (quoting SCP License Agreement at ¶ 1.1).)

LT Lender's "payoff letter," which was provided to GrowMI before GrowMI extended its loan to Lightning, did not reference the settlement agreement, the existence of SCP, Lightning's membership in SCP, or the SCP License Agreement. (Am. Compl. ¶ 79, ECF No. 27 at Pg ID 1201.) GrowMI alleges "[u]pon information and belief" that "the SCP License Agreement

significantly diminishes the value of the collateral pledged by Lightning to secure GrowMI's loan, and compromises the value of Lightning's trade secrets (the principal collateral for GrowMI's loan)." (*Id*. ¶ 84, Pg ID 1202.)

Prior to August 30, 2019, Shamo and Causley each executed a Subordination Agreement with GrowMI and Flagstar, confirming the validity of their lines of credit and that their debt would be subordinate to the GrowMI debt. (*Id*. ¶ 48, Pg ID 1195; *see also* Am. Compl. Exs. A, B, ECF Nos. 22-2, 22-3.) The lines of credit from Shamo and Causley, each in the amount of $5 million, were intended to shore up the cash Lightning needed to purchase the equipment to begin production. (Am. Compl. ¶¶ 44-45, ECF No. 27 at Pg ID 1194.) Shamo and Causley represented that the lines of credit were available for Lightning to draw upon. (*Id*. ¶ 49, Pg ID 1995.)

On August 30, 2019, GrowMI committed up to $5 million to Lightning pursuant to a Business Loan Agreement. (*Id.* ¶ 53, Pg ID 1196; *see also id.* Ex. F, ECF No. 22-7.) As part of the loan, Lightning also executed a Security Agreement and an Intellectual Property Security Agreement. (Am. Compl. ¶ 54, ECF No. 27 at Pg ID 1196; *see also id.* Exs. G & H, ECF Nos. 22-8, 22-9.) Lightning used the funds from GrowMI to pay LT Lender. (Am. Compl. ¶ 94, ECF No. 27 at Pg ID 1203.)

GrowMI maintains that Kassab, a Lightning shareholder and its exclusive financial consultant and then executive vice president, never planned to use GrowMI's financing to make Lightning fully operational. (*See id.* ¶ 2, Pg ID 1185.) Instead, Kassab planned to use the money to pay off the LT Lender Defendants, so they would support Kassab's position in a proxy battle for control of Lightning. (*Id.*) According to GrowMI, Kassab, Shamo, and Causley agreed that Shamo's and Causley's lines of credit would be used only to induce GrowMI and Flagstar to lend Lightning money, and that Lightning's initial draw from GrowMI would go exclusively to LT Lender. (*Id.* ¶ 6, Pg ID 1187.) Further, according to GrowMI, there was an agreement between Kassab, Shamo, and Causley to "induce GrowMI to make its loan to pay off the LT Lender loan and provide returns to the insiders, but that Lightning would not use the Flagstar financing or the Lines of Credit in order to obtain production equipment." (*Id.* ¶ 106, Pg Id 1206.) Instead, that additional financing was obtained simply "to fraudulently induce GrowMI to fund its loan to Lightning …." (*Id.* ¶ 107, Pg ID 1206.)

Having failed to invest the funding to become operational, Lightning fell behind on its payments to GrowMI and was thrown into financial turmoil. (*Id.* ¶ 10, Pg ID 1188.) This financial turmoil discredited Lightning's leadership and enabled Kassab and the remaining Defendants to engage in a proxy battle to take

11

over Lightning.  (*Id.*)  Despite GrowMI's repeated demands, Lightning, through Kassab, refused to draw from the available financing from Flagstar or the lines of credit to order production equipment.  (*Id.* ¶¶ 100-105, Pg ID 1205.)

Despite the availability of this financing, Lightning took a short-term, high-interest loan of $1 million from Shamo in February 2020, purportedly to fund its operations.  (*Id.* ¶¶ 118-19, Pg ID 1208; *see also id.* Ex. K, ECF No. 22-12.) According to GrowMI, the loan was made, in part, so Kassab, acting as Lightning's executive vice president, could pay $400,000 to his own company, Solyco, allegedly as a finder's fee for raising capital.  (Am. Compl. ¶ 124, ECF No. 27 at Pg ID 1209.)  Solyco knew the payment was a sham to confer capital to Kassab and subrogate GrowMI's security interest.  (*Id.* ¶ 25, Pg ID 1209.)  The loan was made in violation of Lightning's Business Loan Agreement with GrowMI, as Lightning was not allowed to incur indebtedness beyond what had been approved when the agreement was executed.  (Am. Compl. ¶¶ 122, ECF No. 27 at Pg ID 1208.)

GrowMI further alleges that, since December 2019, Robert Drake, a Lightning employee, has illegally downloaded Lightning's confidential trade secrets to his own computers.  (Am. Compl. ¶ 11, ECF No. 27 at Pg ID 1188.) GrowMI further alleges that it "has reason to believe that Defendants have used

Drake to provide the necessary trade secrets to them to be able to recreate Lightning's proprietary products." (*Id.*)

GrowMI has filed this federal lawsuit against Defendants, and three lawsuits in Michigan state courts against Kassab, Solyco, and Drake. The state court lawsuits also stem from Lightning's alleged default on the August 2019 loan from GrowMI. (*See* Kassab Mot. Exs. A-C, ECF Nos. 45-1 to 45-3.) In his Counter- and Third-Party Complaint, Kassab alleges that the lawsuits are designed to support the takeover of Lightning by its chief executive officer, Jeffrey Owen, and one of its board members, Bharat Bhise. (Am. Countercl. ¶¶ 1-5, ECF No. 38 at Pg ID 1395-96.)

## III.    The Parties' Arguments for Dismissal

In their motions to dismiss, Defendants argue that GrowMI lacks Article III standing to bring this lawsuit because it has suffered no damages. This is because, on May 28, 2020, Bhise, through his company BB Invescor I, LLC ("BB"), entered into an option agreement to purchase GrowMI's note and paid almost $1 million to bring the loan current. (*See* ECF No. 63.) The option agreement also requires BB to pay GrowMI's legal fees and costs associated with the various pending lawsuits. (*Id.*) Kassab alternatively argues that this Court should abstain from litigating GrowMI's federal lawsuit due to the parallel state court proceedings under the

doctrine outlined in *Colorado River Conservation District v. United States*, 424 U.S. 800 (1976).

Defendants alternatively seek dismissal of GrowMI's claims pursuant to Rule 12(b)(6). Although their arguments vary to some degree, Defendants' motions raise challenges to GrowMI's ability to plead the elements of its RICO claims. Defendants maintain that the Court's dismissal of GrowMI's RICO claims requires dismissal of GrowMI's RICO conspiracy claim, as well. Lastly, Defendants urge the Court to not exercise supplemental jurisdiction over GrowMI's state law claims.

GrowMI and O'Keefe seek dismissal of Kassab's counter- and third-party claims, arguing first that the claims do not form part of the same case or controversy as alleged in GrowMI's pleading to grant this Court subject matter jurisdiction over them. Alternatively, GrowMI and O'Keefe urge the Court to decline exercising supplemental jurisdiction over Kassab's state law claims. Finally, GrowMI and O'Keefe maintain that Kassab fails to state viable claims.

## IV.    Applicable Law & Analysis

### A.    Standing

Article III of the Constitution grants federal courts subject matter jurisdiction over actual cases or controversies, neither of which exist unless a plaintiff establishes standing to sue. *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 613

(1989); *see also* U.S. Const. art. III § 2. "The irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). As the *Lujan* Court identified:

> First, [the p]laintiff must have suffered an injury in fact—an invasion of a legally-protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 560-61. Defendants focus on the first two elements.

Defendants argue that GrowMI has not suffered any injury because the BB option agreement remedied Lightning's default on the GrowMI loan and covers any attorneys' fees GrowMI incurs in the pending lawsuits. Nevertheless, the involuntary bankruptcy filing reflects that Lightning has since defaulted on the loan. Counsel for the parties confirmed this fact during a telephonic status conference with the Court on May 17, 2021. Accordingly, GrowMI *has* suffered injury.

Defendants also argue that GrowMI's injuries were not "proximately caused" by their alleged misconduct. This is not what is required to establish causation for purposes of standing, however. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014). Traceability, as required for

Article III standing, "is not focused on whether the defendant 'caused' the plaintiff's injury in the liability sense." *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 796 (6th Cir. 2009). "In the nebulous land of 'fairly traceable,' where causation means more than speculative but less than but-for, the allegation that a defendant's conduct was a motivating factor in the [plaintiff's injury] satisfies the requisite standard." *Parsons v. United States Dep't of Justice*, 801 F.3d 701, 714 (6th Cir. 2015). GrowMI's allegations sufficiently satisfy this requirement.

As such, the Court concludes that GrowMI has standing to bring this lawsuit.

## B. RICO

The civil RICO statute, 18 U.S.C. § 1964(c), creates a cause of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. §] 1962." "[B]y reason of" means the injury must be proximately caused by the RICO violation. *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 265-68 (1992). To prove a RICO claim, the plaintiff must show the following: "1) there were two or more predicate offenses; 2) the existence of an enterprise engaged in or affecting interstate or foreign commerce; 3) a nexus between the pattern of racketeering activity and the enterprise; and 4) an injury to [the plaintiff's] business or property by reason of the above." *Frank v. D'Ambrosi*, 4 F.3d 1378, 1385 (6th Cir. 1993) (citation omitted).

To establish a pattern of racketeering activity, the plaintiff must show that the defendants committed at least two predicate racketeering acts within ten years of each other that demonstrate criminal conduct of a continuing nature. 18 U.S.C. § 1961(5). The racketeering predicates must be "related" and "amount to or pose a threat of continued criminal activity." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 409 (6th Cir. 2012) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 237-39 (1989)). Racketeering activity consists of acts that are indictable under a number of federal statutes listed in 18 U.S.C. § 1961(1)(B). GrowMI's RICO claims are premised on the following predicate acts: (a) bank fraud in violation of 18 U.S.C. § 1344; (b) unlawful transactions involving money derived from bank fraud in violation of 18 U.S.C. § 1957; (c) theft of trade secrets in violation of 18 U.S.C. § 1832; and, (d) wire fraud in violation of 18 U.S.C. § 1343. (*See* RICO Case Stmt., ECF No. 23.)

GrowMI does not allege that it is a financial institution. Neither the Supreme Court nor the Sixth Circuit have specifically addressed whether a non-bank has standing to assert a claim of bank fraud in the context of a RICO predicate act. However, many district courts, including some within the Sixth Circuit, have addressed the question and have held that only a defrauded financial institution may assert bank fraud as a predicate act for a federal RICO claim. *See, e.g., Am. Biocare, Inc v. Howard & Howard Attorney's, PLLC*, No. 14-cv-14464,

2016 WL 5661583, at * (E.D. Mich. Sept. 30, 2016), *aff'd* 702 F. App'x 416 (6th Cir. 2017) (collecting cases); *Infocision Mgmt. Corp. v. Found. for Moral Law, Inc.*, Nos. 5:08-cv-1342, 5:08-cv-1412, 2009 WL 650282, at *9 (N.D. Ohio Jan. 14, 2009) (collecting cases); *Brickley v. ScanTech Identification Beams Sys., LLC*, 566 B.R. 815, 851 (W.D. Tex. 2017) (collecting cases); *Honorable v. Easy Life Real Estate System, Inc.*, 182 F.R.D. 553, 562 (N.D. Ill. Sept. 29, 1998); *Yesko v. Fell*, No. ELH-13-3927, 2014 WL 4406849, at *11 (D. Md. Sept. 5, 2014) (citing cases). Given GrowMI's failure to allege that it is a financial institution, the Court finds that its bank fraud claims should be dismissed.

With respect to trade secret violations, 18 U.S.C. § 1832, GrowMI's allegations are wholly conclusory with respect to a connection between Drake's alleged downloading of Lightning's proprietary information and the conduct of the RICO enterprise's affairs. GrowMI alleges no facts to support a connection. Instead, GrowMI makes conclusory assertions such as: "GrowMI has reason to believe that Defendants have used Drake to provide the necessary trade secrets to them to be able to recreate Lightning's proprietary products." (Am. Compl. ¶ 11, ECF No. 27 at Pg ID 1189.) "The mere fact that someone believes something to be true does not create a plausible inference that it is true." *In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*, 756 F.3d 917, 931 (6th Cir. 2014)

(affirming dismissal of a suit based partly on allegations pleaded "upon information and belief").

Moreover, any injuries GrowMI may suffer as a result of Drake's alleged activities are only because of GrowMI's position as a creditor of Lightning. Creditors generally do not have standing under RICO because their injuries usually are derivative of that of the corporation and are not caused proximately by the RICO violations. *See Hamid v. Price Waterhouse*, 51 F.3d 1411, 1420 (9th Cir. 1995) (quoting *Manson v. Stacescu*, 11 F.3d 1127, 1130 (2d Cir. 1993), *cert. denied* 513 U.S. 915 (1994)) ("'The creditor generally sustains injury only because he has a claim against the corporation. The creditor's injury is derivative of that of the corporation and is not caused proximately by the RICO violations.'"); *see also Bivens Gardens Office Bld., Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898, 907-08 (11th Cir. 1998). There is an exception where the creditor suffers an injury separate and distinct from the corporation, *see, e.g., Manson*, 11 F.3d at 1130; however, GrowMI did not suffer a distinct injury from Lightning with respect to Drake's allege theft of Lightning's trade secrets. The cases cited by GrowMI do not hold otherwise, as they addressed Article III standing rather than RICO standing. *See Constellation Energy Commodities Grp., Inc. v. Fed. Energy Regulatory Comm'n*, 457 F.3d 14, 20 (D.C. Cir. 2006); *In re Paxton*, 440 F.3d 233, 236 (5th Cir. 2006); *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 55 (2d Cir.

2004).  As noted earlier, *see supra* at n.2, Article III standing and RICO standing are not the same, with the more demanding "proximate cause" requirement between the defendant's misconduct and the plaintiff's injury being necessary only for the latter.

This leaves one predicate act: wire fraud in violation of 18 U.S.C. § 1343. However, *at least* two predicate acts are required to establish a pattern of racketeering activity.  As such, the Court concludes that GrowMI's RICO claim is subject to dismissal.  GrowMI's RICO conspiracy claim fails for the same reason.

### C.    GrowMI's State Law Claims

The Court has supplemental jurisdiction over GrowMI's state law claims pursuant to 28 U.S.C. § 1367.  In § 1367, Congress granted district courts the discretion to exercise supplemental jurisdiction if *inter alia* all claims over which there is original jurisdiction have been dismissed.  28 U.S.C. § 1367(c).  District courts have "broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims.  *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996).  This discretion is circumscribed, however, by considerations of "'judicial economy, convenience, fairness, and comity.'"  *Id*. (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  "After a [Rule] 12(b)(6) dismissal, there is a strong presumption in favor of dismissing supplemental claims."  *Id*. at 1255 (citations omitted) ("When all federal claims are

dismissed before trial, the balance of considerations usually will point to dismissing state law claims, or remanding them to state court if the action was removed.").

Because the Court has dismissed GrowMI's federal claims, it declines to exercise supplemental jurisdiction over its state law claims. Particularly significant to the Court in reaching this decision is the fact that there are three state court lawsuits pending between the parties, which arise from the same activities at issue in the present matter. Comity interests persuade the Court that it should not exercise jurisdiction over these state law claims which could be litigated in the pending state court actions—if they are not already raised there.

Having reached these conclusions, the Court finds it unnecessary to reach the *Colorado River* doctrine argument and other arguments raised by Defendants in support of their motions to dismiss.

### D.     Kassab's Counter- and Third-Party Claims

As indicated, Kassab asserts only state law claims against GrowMI and O'Keefe. Jurisdiction is premised on the supplemental jurisdiction statute, 28 U.S.C. § 1367. (*See* Am. Countercl. ¶ 35, ECF No. 38 at Pg ID 1404; Am. Third-Party Compl. ¶ 35, ECF No. 39 at Pg ID 1457.) GrowMI and O'Keefe argue that the Court lacks supplemental jurisdiction over Kassab's claims because they do not arise from a common nucleus of operative fact as the claims alleged in GrowMI's

Amended Complaint. Alternatively, GrowMI and O'Keefe contend that Kassab's claims fail on the merits.

Because the Court has dismissed the claims over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over Kassab's counter- and third-party claims.

## IV. Remaining Motions

Based on the Court's conclusion that GrowMI's RICO claims are subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), and the Court's decision not to exercise supplemental jurisdiction over the remaining state law claims alleged by GrowMI and Kassab, the parties' remaining motions are moot.

Accordingly,

**IT IS ORDERED** that Defendants' motions to dismiss (ECF Nos. 45, 47, 51) are **GRANTED** in that GrowMI's RICO claims (Counts I-5) are **DISMISSED WITH PREJUDICE** and GrowMI's state law claims (Counts 6-9) are **DISMISSED WITHOUT PREJUDICE**;

**IT IS FURTHER ORDERED** that GrowMI and O'Keefe's motion to dismiss (ECF No. 53) is **GRANTED** in that Kassab's counter- and third-party claims are **DISMISSED WITHOUT PREJUDICE**;

**IT IS FURTHER ORDERED** that the parties' remaining motions (ECF Nos. 66, 73, 78, 79, 82) are **DENIED AS MOOT**.

**IT IS SO ORDERED.**

                                                    s/ Linda V. Parker
                                                    LINDA V. PARKER
                                                    U.S. DISTRICT JUDGE
Dated: June 3, 2021